UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 2:26-cv-00542-MWC-AGR                                                Date: January 23, 2026

Title: That's No Moon Entertainment Inc. v. Michael Mumbauer

---

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) Order GRANTING Plaintiff's *Ex Parte* Application for Temporary Restraining Order (Dkt. [6])**

Before the Court is Plaintiff That's No Moon Entertainment Inc.'s ("Plaintiff") *ex parte* application (the "Application") seeking a temporary restraining order ("TRO") enjoining Defendant Michael Mumbauer ("Defendant") from interfering with any of That's No Moon Entertainment Inc.'s domains and mandating that Defendant relinquish control over those domains. *See* Dkt. # 6 ("*App.*"). Defendant opposed, *see* Dkt. # 13 ("*Opp.*"), and Plaintiff replied, *see* Dkt. # 14 ("*Reply*").[1] For the reasons set forth below, the Court **GRANTS** the Application.

I.   Background

The Application details that in 2020, four video game developers—including Defendant—formed That's No Moon Entertainment, Inc. *See* Dkt. # 6-1 ("*Kononelos Decl.*") ¶ 2. That's No Moon Entertainment, Inc. was a video game studio that attempts to create "captivating, narrative-driven video games," and Defendant was the entity's first CEO. *See id.* The studio has worked on developing a single-player, action-adventure game. *See id.* ¶ 4. As part of their work to establish the studio, the founding members built

---

[1] Defendant filed his opposition more than 24 hours after Plaintiff filed its *ex parte* application, rendering the opposition untimely under the Court's Standing Order. The Court also does not normally entertain reply filings in the *ex parte* process. Because the Court prefers to decide issues on the merits, it chooses to consider these filings, but admonishes the parties to comply with the Court's Standing Order going forward.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-00542-MWC-AGR                                    Date: January 23, 2026

Title:  That's No Moon Entertainment Inc. v. Michael Mumbauer

a website and registered 13 domain names including the "That's No Moon" mark in 2020. *See id.* ¶¶ 6–7.

At that stage in the studio's development, it was customary for the founding members to personally incur expenses that the studio reimbursed. *See id.* ¶ 8. In September 2020, Defendant purchased the relevant domains on Plaintiff's behalf. *Id.* ¶ 9. On November 12, 2020, the parties executed a promissory note in which Plaintiff agreed to pay Defendant $2,836.75, plus interest. *Id.* ¶ 10, Ex. A. On April 5, 2021, Plaintiff paid Defendant $2,842.14 under the promissory note, which included the original loan amount to purchase the domains, plus interest. *See id.* ¶ 13.

Under GoDaddy.com's procedures, an individual must be listed as the owner of the domain keys and login information to maintain a domain's active status. *See id.* ¶ 14. Defendant listed himself as that individual for Plaintiff's domains. *See id.* Still, Plaintiff and its founding members intended that Plaintiff would be the only party using those domains. *See id.* ¶ 15. Plaintiff did so until Defendant began to interfere with Plaintiff's access to the domains following his termination. *See id.*

While employed at Plaintiff, Defendant signed an Amended and Restated Proprietary Information, Inventions and Non-Solicitation Agreement ("PIIA") with Plaintiff. *See id.* ¶ 16, Ex. B. The PIIA prohibited Defendant from accessing Plaintiff's computer systems for any "authorized, improper, or competitive purpose, both while employed and thereafter," and required Defendant to return all of Plaintiff's property to Plaintiff upon termination of employment. *See id.*, Ex. B. The PIIA also listed Plaintiff as the owner of all "Company-related digital and social media accounts (including all passwords, data posts, digital works and goodwill therein)" and that, upon termination, Defendant would "surrender full control and access to such account to the Company." *See id.*

On February 17, 2022, citing a lack of alignment with Plaintiff's vision and a breach of Defendant's duty to act in Plaintiff's best interests, Plaintiff terminated Defendant. *See id.* ¶¶ 17–19. Plaintiff now serves as the CEO of Liithos, which also aims to build narrative-driven video games. *See id.* ¶ 52.

On July 11, 2022, Plaintiff requested that Defendant unlock and generate authorization codes for each of the Plaintiff's 13 domains so that Defendant could transfer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-00542-MWC-AGR                                       Date: January 23, 2026

Title:     That's No Moon Entertainment Inc. v. Michael Mumbauer

them to Plaintiff.  *See id.* ¶ 20, Ex. C. Defendant ignored the request.  *See id.*  Plaintiff followed up three days later, and Defendant replied, "This wont [*sic*] be happening."  *See id.*  On January 9, 2023, Plaintiff filed a complaint with the National Arbitration Forum demanding that Defendant transfer Plaintiff's domains.  *See id.* ¶ 21.  On February 3, 2023, the National Arbitration Forum denied the request because Plaintiff did not provide its trademark registrations as evidence of its rights to the domains' marks.  *See id.* ¶ 22. Plaintiff now has valid registrations for three different marks related to That's No Moon (U.S. Trademark Registration Nos. 6874240, 7158361, 7158360).  *See id.* ¶ 23; Dkt. # 6-6 ("*Rana Decl.*"), Ex. C.  Plaintiff also has four additional pending trademark applications. *See Kononelos Decl.* ¶ 24.

Around 6 a.m. on January 6, 2026, Defendant took control of ThatsNoMoon.com and Plaintiff's other domains, preventing Plaintiff from accessing its website or the services associated with its website's domain.  *See id.* ¶¶ 26–27.  ThatsNoMoon.com was, until that point, Plaintiff's main website and primary way to communicate with investors, customers, gamers, and business partners.  *See id.* ¶ 27.  Defendant having control of the domains prevented Plaintiff's employees from emailing any sender or recipient outside of the company; anyone trying to communicate with Plaintiff's employees received either a bounce-back message or no response at all.  *See id.* ¶ 28.  That same day, ThatsNoMoon.com began redirecting website visitors to https://www.travelswitzerland.com/en/.  *Id.* ¶ 29.  Plaintiff quickly set up a new URL, ThatsNoMoon.co, and migrated as many services as possible to that site to resume operations.  *See id.* ¶ 31.  Plaintiff has continued to work to fix the issues stemming from Defendant's actions, but new technological issues continue to arise.  *Id.* ¶ 32.

Defendant's takeover of Plaintiff's domains has caused employees to lose access to communication and information management software.  *See id.* ¶ 33.  Plaintiff lost communication with human resources service providers, resulting in missed payroll reminders and invoices, *see id.* ¶ 34, and business partners have been unable to reach Plaintiff, *see id.* ¶ 35.  Individuals have reached out to the company via other platforms, like LinkedIn, to inform the company of its website issues.  *See id.* ¶ 37.  Those emailing Plaintiff's executives have received bounce-back messages, *see id.* ¶ 35, and employee candidates have been unable to contact the company, *see id.* ¶ 38.  Company executives "continue to spend substantial time informing external partners and others about the new website and e-mail addresses and reassuring them that the company is healthy."  *See id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-00542-MWC-AGR                                    Date: January 23, 2026

Title:     That's No Moon Entertainment Inc. v. Michael Mumbauer

¶ 41.  Plaintiff has spent about $1.2 million over the last few weeks to address the consequences of Defendant's actions.  *Id.* ¶ 43.

Plaintiff's counsel sent a cease and desist notice to Defendant on January 7, 2026.  *See id.* ¶ 44.  After Plaintiff's counsel sent that notice, ThatsNoMoon.com no longer redirected visitors to the "Travel Switzerland" website, and it now redirects to a website showing that the domain is "available on GoDaddy auctions" with a listed price of $6,666,666.  *See id.* ¶ 45.  One of Plaintiff's other websites, www.TNMProductions.com, redirects to a GoDaddy Auctions site that includes an article related to Drug and Alcohol Education Courses.  *See id.* ¶ 46.

Defendant's opposition argues that the case is moot because Defendant confirmed in writing that "he would transfer to TNM, and relinquish control of, the 13 domain names . . . ."  *See Opp.* 2.  Defendant declares that he has done so, *see* Dkt. # 13-1 ("*Mumbauer Decl.*") ¶¶ 2–3, and that he "[r]eceived confirmation from Go Daddy.com [*sic*] that the name change of the registrant of the Domains (the transfer to TNM) was pending," *see id.* ¶ 4.  He avers that, to his knowledge, he has "no further way to access, and do[es] not intend to access, any of the Domains, including to make use of them, direct them to other websites, take control of them in any way, transfer, sell or alter them or interfere with them in any way."  *See id.* ¶ 5.  Still, Plaintiff's reply to Defendant's opposition argues that the case is not yet moot because Defendant fails to provide evidentiary support for his statements that he can no longer access the domains.  *See Reply* 2.

II.   Legal Standard

   A.   *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)).  "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO."  *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified.  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-00542-MWC-AGR            Date: January 23, 2026

Title:     That's No Moon Entertainment Inc. v. Michael Mumbauer

1995). A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

     B.     Temporary Restraining Orders

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)).

III.     Discussion

     A.     *Ex Parte* Application and *Mission Power* Factors

Plaintiff has shown that it is entitled to *ex parte* relief. The Application details ongoing harm, which will continue to accrue until Plaintiff regains control over its domains. If the Court heard the motion according to regularly noticed procedures, that would leave Plaintiff without recourse for 28 days. The delay would only exacerbate the reputational, financial, and other damage that Plaintiff describes. Accordingly, Plaintiff has satisfied the first *Mission Power* factor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-00542-MWC-AGR                                           Date: January 23, 2026

Title:  That's No Moon Entertainment Inc. v. Michael Mumbauer

Plaintiff is not at fault in creating the crisis that requires *ex parte* relief.  Plaintiff has attempted to regain control over its domains several times, and it has already attempted to resolve this dispute without filing suit.  Now, without any other potential recourse, Plaintiff filed its *ex parte* application for a temporary restraining order to curtail the ongoing harm.  Though Plaintiff could have sought this same relief sooner, the Court will not fault it for attempting to use extrajudicial means to settle this dispute.  For that reason, Plaintiff has satisfied the second *Mission Power* factor and is entitled to *ex parte* relief.

B.      Mootness

Despite Defendant's mootness argument, the Court finds that injunctive relief is still appropriate at this stage.  "Even if the unlawful practices have ceased, the Ninth Circuit has established that injunctive relief may still be appropriate."  *FTC v. Amazon.com, Inc.*, 71 F. Supp. 3d 1158, 1168 (W.D. Wash. 2014) (citation omitted); *Fed. Trade Comm'n v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006, 1012 (C.D. Cal. 2012) ("[I]t is well-established that the court's power to grant such relief survives discontinuance of the illegal conduct, and because the purpose is to prevent future violations, injunctive relief is appropriate when there is a cognizable danger of recurrent violation, something more than the mere possibility.").

Here, the extent of Defendant's evidence that the case is moot consists of five paragraphs in his declaration, which lacks any additional documentation.  *See generally Opp.*; *Mumbauer Decl.*  The Court cannot rely on only Defendant's "knowledge" that he has no additional way to access the domains or that he will not use them.  *See Mumbauer Decl.* ¶ 5.  Moreover, the name change of the domains' registrant is still pending with GoDaddy.com.  *See id.* ¶ 4.  It is possible that additional filings will change the Court's view of the ability for Defendant's conduct to recur, but since that possibility remains currently, the Court cannot deem the request for a TRO moot.  *See Covenant Media of Cal., LLC v. City of Huntington Park, Cal.*, 377 F. Supp. 2d 828, 838 n.29 (C.D. Cal. 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-00542-MWC-AGR                                    Date: January 23, 2026

Title:       That's No Moon Entertainment Inc. v. Michael Mumbauer

    C.    <u>*Winter* Factors</u>

        i.    *Likelihood of Success on the Merits*

           a.    *Trademark Infringement*

To succeed on a trademark infringement claim, a plaintiff must show ownership of a protectable trademark and a likelihood of consumer confusion. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987). A plaintiff makes a prima facie showing of ownership of a protectable trademark by producing a certificate of registration. 15 U.S.C. § 1057(b). Likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a product or service identified by a similar mark." *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443 (9th Cir. 1980).

Plaintiff has shown a likelihood of success on the merits of its trademark infringement claim. It provides registration certificates for three different trademarks with which Defendant is potentially interfering. *See Rana Decl.*, Ex. C. These certificates serve as a prima facie showing of its trademark ownership, and Defendant has offered no evidence to the contrary.

When evaluating consumer confusion at the TRO stage, "the relevant question is *likelihood* of confusion (i.e., potential confusion), not actual confusion." *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1038 (N.D. Cal. 2003) (emphasis in original) (citation omitted). Plaintiff has offered evidence that its website redirected to a "Travel Switzerland" website, and now is listed as "available on GoDaddy auctions." *Kononelos Decl.* ¶ 45. It has provided similar information related to another one of its websites. *See id.* ¶ 46. Plaintiff also included evidence that individuals have reached out through other platforms, like LinkedIn, to notify Plaintiff of these issues. *See id.* ¶ 37. When one causes outsiders to misassign actions to a brand under a protected mark, that constitutes consumer confusion. *See, e.g.*, *Quokka Sports, Inc. v. Cup Int'l Ltd.*, 99 F. Supp. 2d 1105, 1115 (N.D. Cal. 1999); *Brookfield Commc'ns v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1053–61 (9th Cir. 1999); *SMC Promotions, Inc. v. SMC Promotions*, 355 F. Supp. 2d 1127, 1135–36 (C.D. Cal. 2005).

Thus, Plaintiff has shown a likelihood of success on the merits of its trademark infringement claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:26-cv-00542-MWC-AGR | Date: January 23, 2026 |
| Title: That's No Moon Entertainment Inc. v. Michael Mumbauer | |

### b.  *Cybersquatting*

Plaintiff next claims a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).  To establish liability under the Act, Plaintiff must prove "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'"  *DSPT Int'l., Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)).

Plaintiff has shown a likelihood of success on the merits of its cybersquatting claim.  It has provided evidence that Defendant has refused to cede control over Plaintiff's domains, *see Kononelos Decl.* ¶¶ 14, 20, despite Plaintiff being the rightful owner and only intended user of those domains, *see id.* ¶¶ 13, 15.  Plaintiff also included evidence that Defendant began taking unauthorized action on Plaintiff's domains on January 6, 2026, *see id.* ¶¶ 26–27, and adjusted his actions after receiving Plaintiff's cease and desist letter, *see id.* ¶ 44.  This evidence satisfies the first two factors under 15 U.S.C. § 1125(d)(1)(A).

Regarding the third factor, Defendant has now listed at least two of the domains for sale, including one domain for $6,666,666.  *See Kononelos Decl.* ¶¶ 45–46.  Defendant has shown no willingness to work with Plaintiff and instead has only undermined Plaintiff's position in the market by creating the confusion described previously.  These actions suffice to show that Defendant has acted with a bad-faith intent to profit from Plaintiff's domains.  *See* 15 U.S.C. § 1125(d)(B)(i) (listing factors to consider, including whether defendant has trademark or intellectual property rights in domains and whether defendant has attempted to harm goodwill represented by the mark).  Defendant is also the CEO of a competitor company, so he stands to profit from consumer confusion.  *See Kononelos Decl.* ¶ 52.

Accordingly, Plaintiff has shown a likelihood of success on the merits of its cybersquatting claim.

### c.  *Computer Fraud*

The Computer Fraud and Abuse Act ("CFAA") creates liability if an individual "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."  18 U.S.C. § 1030(a)(5)(A); *In re Apple Inc. Device Performance Litig.*, 347 F.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:26-cv-00542-MWC-AGR | Date: January 23, 2026 |
| Title: That's No Moon Entertainment Inc. v. Michael Mumbauer | |

Supp. 3d. 434, 451 (N.D. Cal. 2018). "Damage" under the statute is "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), and a "protected computer" is a computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States," 18 U.S.C. § 1030(e)(2)(B). Plaintiff also references the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), which requires the Plaintiff to show that an individual "knowingly and without permission disrupted or caused the disruption of computer services or denied or caused the denial of computer services to an authorized user of a computer, computer system, or computer network," *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) (citing Cal. Penal Code § 502(c)(5)).

In this case, Plaintiff has offered sufficient evidence to show a potential violation of both statutes. Defendant altered Plaintiff's domains to redirect, causing Plaintiff financial harm and impairing its ability to communicate with outside parties. *See Kononelos Decl.* ¶¶ 26–29, 43. Both statutes refer to Defendant "knowingly" acting, and evidence of Plaintiff's unwillingness to relinquish control, *see id.* ¶ 20, and adjustment of Plaintiff's domain after receiving Plaintiff's cease and desist letter, *see id.* ¶ 45, suffice at this stage. *See Vaquero Energy, Inc. v. Herda*, No. 1:15-cv-0967-JLT, 2015 WL 5173535, at *6–7 (E.D. Cal. Sept. 3, 2015) (finding likely CFAA violation where individual altered plaintiff's computer systems without authorization); *Hidden Empire Holdings, LLC v. Angelone*, No. CV 22-6515-MWF (AGRx), 2022 WL 17080131, at *6–7 (C.D. Cal. Sept. 30, 2022) (finding likely CDAFA violation where defendant prevented plaintiffs from accessing computer systems).

Accordingly, Plaintiff has shown a likelihood of success on the merits of its computer fraud claims.

### d.     Conversion

"Conversion is the wrongful exercise of dominion over the property of another." *Oakdale Village Grp. v. Fong*, 43 Cal. App. 4th 539, 543 (1996). "To establish conversion, a plaintiff must show: (1) the plaintiff's ownership or right to possession to the property at the time of conversion; (2) the defendant's conversion by a wrongful act; and (3) damages."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:26-cv-00542-MWC-AGR | Date: January 23, 2026 |
| Title: That's No Moon Entertainment Inc. v. Michael Mumbauer | |

*Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) (citing *Oakland Village Grp.*, 43 Cal. App. 4th at 543–44).

Plaintiff has shown a likelihood of success on the merits of its conversion claim. Plaintiff purchased the domains through Defendant and later reimbursed him. *See Kononelos Decl.* ¶¶ 9–13. Plaintiff also owns trademarks related to those domains. *See id.* ¶ 23. Though Defendant should have ceded control of the domains, he long refused to do so. *See id.* ¶ 20. Regarding damages, Plaintiff has detailed financial damages stemming from its need to migrate to a new website and other associated costs, *see id.* ¶¶ 31, 32, 43, damages to efficiency and operations, *see id.* ¶¶ 33–35, and potential lost opportunities to hire, *see id.* ¶ 38. Accordingly, Plaintiff has demonstrated that all three conversion factors, demonstrating a likelihood of success on the merits of its claim.

    e.  *Trespass to Chattels*

"To prevail on a claim for trespass to chattel, [a plaintiff] must allege that [a defendant] intentionally and without authorization interfered with his possessory interest in personal property and that such unauthorized use proximately resulted in damage to him." *Shin v. ICON Found.*, 553 F. Supp. 3d 724, 733 (N.D. Cal. 2021) (citing *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 842 (N.D. Cal. 2017)). Internet domains are personal property. *See Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003).

As the Court has already detailed, Plaintiff has offered evidence that it was the rightful owner of the domains over which Defendant has exerted control. *See supra* Section III.C.i.d. Defendant has also interfered with those domains by refusing to return them, *see Kononelos Decl.* ¶¶ 20, 44, and by altering the functionality of those domains, *see id.* ¶¶ 15, 26–29. That interference has caused financial, reputational, and operational damage to Plaintiff. *See supra* Section III.C.i.d. Thus, Plaintiff has shown a likelihood of success on the merits of its trespass to chattels claim.

    f.  *Breach of Contract*

Plaintiff's final claim is for breach of contract. "To prevail on a cause of action for breach of contract, a plaintiff must show the existence of a valid contract, performance or excuse for non-performance under the contract, defendant's breach, and resulting damage." *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1056 (C.D. Cal. 2012) (citing *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   2:26-cv-00542-MWC-AGR                                      Date: January 23, 2026

Title:   That's No Moon Entertainment Inc. v. Michael Mumbauer

While employed at Plaintiff, Defendant signed the PIIA. *See Kononelos Decl.* ¶ 16, Ex. B. The PIIA prohibited Defendant from accessing Plaintiff's computer systems for any "authorized, improper, or competitive purpose, both while employed and thereafter," and required Defendant to return all of Plaintiff's property to Plaintiff upon termination of employment. *See id.* The PIIA also listed Plaintiff as the owner of all "Company-related digital and social media accounts (including all passwords, data posts, digital works and goodwill therein)" and that, upon termination, Defendant would "surrender full control and access to such account to the Company." *See id.*

Despite Plaintiff terminating Defendant on February 17, 2022, Defendant long refused to surrender full control and access to Plaintiff's domains. *See id.* ¶¶ 20–21. He has also actively exercised control—to Plaintiff's detriment—over those same domains. *See id.* ¶¶ 26–27. Plaintiff details about $1.2 million in monetary damage from that loss of control, *see id.* ¶ 43, in addition to the other non-monetary damages that the Court has already discussed, *see supra* Section III.C.i.d, Section III.C.i.e.

As such, Plaintiff has shown a likelihood of success on the merits of its breach of contract claim.

      ii.    *Irreparable Harm*

Plaintiff has detailed several forms of irreparable harm stemming from Defendant's conduct. First, an amendment to the Lanham Act creates a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits. *See* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a . . . temporary restraining order."). The Court has found a likelihood of success on the merits of Plaintiff's trademark infringement claim, and Defendant did not address the rebuttable presumption of irreparable harm. *See Shakeys Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 24-7084, 2025 WL 1431270, at *2 (9th Cir. May 19, 2025).

In addition to Plaintiff's irreparable harm for trademark infringement, it has detailed several other forms of irreparable harm. "Courts have found that the loss of customers, business reputation, and customer goodwill can constitute irreparable harm." *Forefront*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:26-cv-00542-MWC-AGR | Date: January 23, 2026 |
| Title: That's No Moon Entertainment Inc. v. Michael Mumbauer | |

*Dermatology S.C. v. Crossman*, 642 F. Supp. 3d 947, 951 (D. Ariz. 2022) (citing *Krueger Invs., LLC v. Cardinal Health 110, Inc.*, No. CV 12-618-PHX-JAT, 2012 WL 3028349, at *5 (D. Ariz. July 24, 2012)). Defendant's taking control of Plaintiff's main website hampered its ability to communicate with investors, customers, gamers, and business partners. *See Kononelos Decl.* ¶¶ 27, 35. Those emailing company executives have received bounce-back messages, *see id.* ¶ 35, and employee candidates have been unable to contact the company, *see id.* ¶ 38. Company executives "continue to spend substantial time informing external partners and others about the new website and e-mail addresses and reassuring them that the company is healthy." *See id.* ¶ 41. Hampering company operations—the natural result of employees being unable to communicate with individuals outside the business—would foreseeably harm that company's reputation. Moreover, it is not clear how money or other *ex post* remedies could repair Plaintiff's loss of qualified job candidates. Accordingly, Plaintiff has shown irreparable harm sufficient to justify the issuance of a TRO.

   *iii.*  *Balance of Equities and Public Interest*

  Because the balance of equities and public interest factors overlap in this case, the Court will analyze them together. "The 'balance of equities' concerns the burdens or hardships to [a plaintiff] compared with the burden on [the defendant] if an injunction is ordered. The 'public interest' mostly concerns the injunction's impact on nonparties rather than parties." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (cleaned up). The public has an interest in enjoining individuals from continuing to act unlawfully. *See Microsoft Corp. v. Softwareau.com*, No. CV 15-08019-AB (JEMx), 2016 WL 7647682, at *6 (C.D. Cal. June 22, 2016) ("These statutes are law, and enjoining a person or entity from breaking the law advances the common good."). Specifically, "[i]n the trademark context, the public interest is usually the right of the public not to be deceived or confused." *Century 21 Real Est. LLC v. All Prof. Realty, Inc.*, No. CIV 2:10-2751; 2011 221651, at *13 (E.D. Cal. Jan. 24, 2011) (citing *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993–94 (9th Cir. 2009)).

  Defendant has not offered any reason that the balance of equities tips in his favor. *See generally Opp.* Instead, he avers that Plaintiff has already received the relief it requests. *See id.* Even if the Court does not view this argument as a tacit admission that enjoining his actions is appropriate, the Court is left with several reasons to provide Plaintiff its requested relief and none to the contrary. Plaintiff remains at risk of losing goodwill in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:26-cv-00542-MWC-AGR                                                                  Date: January 23, 2026

Title:   That's No Moon Entertainment Inc. v. Michael Mumbauer

marketplace, suffering from disrupted operations, and being unable to receive inquiries from qualified job candidates. There remains a risk that the public is deceived or confused if Defendant regains control of the domains—as discussed *supra*, Defendant has not provided any evidence beyond his own assertions that regaining control is an impossibility. *See* Section III.B. For these reasons, the balance of equities and the public interest support the issuance of a TRO. *See, e.g.*, *HDOS Franchise Brands, LLC v. El Paso Hot Dog, LLC*, No. 3:21-cv-00201-AJB-BLM, 2021 WL 5629923, at *8 (S.D. Cal. June 29, 2021) ("[T]he Court finds that the balance of equities weighs in Plaintiffs' favor because they have a strong interest in protecting their reputation and goodwill, which will be irreparably harmed absent injunctive relief."); *Panda Rest. Grp., Inc. v. Enymedia, Inc.*, No. 2:21-cv-3560-AB-AS, 2021 WL 4927416, at *7 (C.D. Cal. Aug. 12, 2021) (finding public interest in ensuring compliance with cybersquatting law).

IV.   Bond Requirement

Rule 65 notes that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original)). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (cleaned up). "That is, the mandatory language of Rule 65(c) does not 'absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond.'" *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *8 (C.D. Cal. June 25, 2025) (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)).

Bond is unnecessary in this case. Defendant does not argue that Plaintiff should provide bond, and he avers that he has already taken the action that the Court is now ordering. Accordingly, and assuming Defendant's version of events is correct, Defendant will not suffer any harm from the issuance of a TRO, rendering bond unwarranted. *See, e.g.*, *Pinocci v. Flynn*, 429 F. Supp. 3d 1060, 1069 (D. Mont. 2024) ("The Court finds an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:26-cv-00542-MWC-AGR                                      Date: January 23, 2026

Title:  That's No Moon Entertainment Inc. v. Michael Mumbauer

injunction bond is unnecessary as there is no realistic likelihood of harm to the Defendant from enjoining his conduct." (cleaned up)).

V.      Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's *ex parte* application for a TRO and **ENJOINS** Defendant from interfering with any That's No Moon Entertainment Inc. domains.

The Court **ORDERS** Defendant to show cause in writing no later than seven days after this Order as to why a preliminary injunction should not issue.  Plaintiff may file a response no later than seven days after Defendant's filing.

**IT IS SO ORDERED.**

:

**Initials of Preparer**   TJ